LINDA G. BROCK, Indiv. and as Independent Adm'r of the Estate of Randall Brock, Plaintiff-Appellant, v. ANDERSON ROAD ASSOCIATION *et al.*, Defendants (Wauconda Fire Department *et al.*, Defendants-Appellees).

Second District    No. 2—96—0438

Opinion filed March 17, 1997.

Barry G. Lowy and William J. Leonard, both of Schultz & Winick, P.C., of Waukegan, for appellant.

D. Kendall Griffith, Stephen R. Swofford, Steven M. Puiszis, and Nancy G. Lischer, all of Hinshaw & Culbertson, of Chicago, for appellees.

18

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Linda Brock, appeals the dismissal of counts III, IV, and VIII of her second amended complaint against the defendants. The counts allege that the defendants, emergency medical technicians Michael Young, Rodney Feltner, Albert Schlick III, and Robert Rucker (defendants-EMTs), caused the death of the plaintiff's husband, Randall Brock, through negligent and wilful and wanton conduct, when they failed to treat him for heat stroke. The plaintiff also alleged that defendant Wauconda fire department (defendant-WFD) was liable based on the doctrine of *respondeat superior*. The trial court dismissed, finding that the defendants-EMTs and defendant-WFD (collectively defendants) were immune from liability. We affirm.

The following facts are taken from the pleadings and the reports and documents attached to the pleadings. On August 11, 1993, the plaintiff's decedent, Randall Brock, became unconscious as a result of a heat-related illness, while working at a construction site on a hot and humid day. In response to a 9-1-1 emergency call placed at 3:19 p.m., the defendant-WFD dispatched emergency medical technicians (EMTs or paramedics), defendants Michael Young and Rodney Feltner, to the construction site. The defendant-WFD is part of the Lake County emergency medical system. Young and Feltner arrived at the site in an ambulance at 3:23 p.m. Upon arriving, Young and Feltner noted that Randall was lying unconscious and partially unclothed on the floor of the house under construction. The team checked Randall's respiration and noted that he was using his muscles to breathe. At that time they called for additional help. After requesting help, Young and Feltner began taking Randall's vital signs, which included checking Randall's blood-pressure (10 palpitations), his respiration rate (32), his pulse (180), his pupils (mid-line and fixed), and his skin (hot and dry). They attempted to take Randall's temperature, but the thermometer displayed an "error" message. In addition, Young and Feltner checked Randall's lungs, noted that they were clear, and prepared a cardiac hookup. They noted that the electrocardiogram (EKG) recorded a heart rate of 180. Young and Feltner then administered oxygen and started an intravenous (IV) line in Randall's right arm.

At 3:34 p.m., the second team of paramedics arrived, defendants Robert Rucker and Albert Schlick III. At 3:38 p.m., the defendants-EMTs moved Randall into the air-conditioned ambulance and began to transport him to Good Shepherd Hospital. While inside the ambulance, Randall began to vomit what appeared to be saliva. The defendants-EMTs suctioned Randall's airway to remove the vomit, listened to Randall's lungs, started a second IV at a "slow rate," and

did a "Chem Strip," which read 110. At 3:40 p.m. the defendants-EMTs contacted Condell Memorial Hospital, one of the resource hospitals for the South Lake County emergency medical system. Condell Hospital gave no orders but requested that the defendants-EMTs attempt to intubate (place a tube down Randall's throat). The defendants-EMTs attempted to intubate twice but were unable because Randall's tongue obstructed the tube. On route to Good Shepherd Hospital, the defendants-EMTs also checked Randall's oxygen level, which was at 85%, and then administered oxygen, which increased the level to 92%. They did another "Chem Strip," which read 110, took vital signs (blood pressure 120, respiration 32, pulse over 200, pupils mid-line and fixed, skin hot and dry), checked Randall's lungs, checked the EKG, and attempted to take his temperature (the thermometer "malfunctioned" again). In addition, the defendants-EMTs were unable to elicit a response to painful stimuli from Randall. At 3:47 p.m. the ambulance arrived at Good Shepherd Hospital. On the way into the emergency room, Randall vomited again. The defendants-EMTs then handed Randall over to the emergency room personnel. On August 23, 1993, Randall died from heat-related injuries.

■ The defendants-EMTs are a part of an emergency medical system established by the legislature through the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/1 *et seq.* (West 1992)). The purpose of the EMS Act is to provide the state with a system for emergency medical services. 210 ILCS 50/2 (West 1992). The purpose of an emergency medical system is to provide prehospital care (210 ILCS 50/2 (West 1992)), that is, "emergency medical services rendered to emergency patients for analytic, resuscitative, stabilizing, or preventative purposes, precedent to and during transportation of such patients to hospitals" (210 ILCS 50/4.16 (West 1992)). Each hospital providing emergency care appoints a project medical director. 210 ILCS 50/4.02, 13 (West 1992). The project medical director is a medical physician who has the ultimate responsibility for patient management. 210 ILCS 50/13, 18 (West 1992). In addition, the EMS Act provides for the licensure of emergency medical technicians. 210 ILCS 50/10 (West 1992). The advanced level EMTs are permitted to perform such functions as cardiac monitoring, electrocardiography, IV therapy, the administration of medications, drugs and solutions, the use of adjunctive medical devices, trauma care, and other procedures authorized by the project medical director. 210 ILCS 50/4.01 (West 1992). In this case, the project medical director authorized certain procedures through written standing orders of procedure (SOPs). The project medical director is authorized

to issue SOPs and a protocol to assess the condition of patients which EMTs must follow. See 77 Ill. Adm. Code §§ 535.200(c), 535.210(m)(1), (m)(7) (1991).

The written SOPs applicable required the defendants-EMTs to (1) provide a "primary survey and management," which includes checking the patient's airway, breathing, and circulation; (2) provide a "secondary survey and continued management," which includes obtaining vital signs, applying chest electrodes, monitoring cardiac rhythm, establishing an IV line with 250cc D5W or normal saline; (3) perform a 90-second survey, which includes evaluating the head, face, nose, ears, neck, sternum, ribs; monitoring and recording breath sounds and listening for heart sounds; and monitoring and recording sensory and circulatory integrity in all extremities; and (4) transmit patient information to the hospital and prepare for transport.

Counts III through VII of the plaintiff's second amended complaint alleged wilful and wanton conduct and negligence on the part of the defendants-EMTs. Count VIII sought recovery from the defendant-WFD based on the theory of *respondeat superior*. The defendants filed an amended motion to dismiss the counts directed against these defendants in plaintiff's second amended complaint, arguing, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 1992)), that they are immune from liability and, pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1992)), that the plaintiff failed to plead wilful and wanton conduct. The trial court granted the defendants' motion, finding immunity based on the following statutes: (1) section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2—201 (West 1992)); (2) section 1 of the Law Enforcement Emergency Care Act (Emergency Care Act) (745 ILCS 20/1 (West 1992)); and (3) section 17(a) of the EMS Act (210 ILCS 50/17(a) (West 1992)). The plaintiff appeals the dismissal of counts III (wilful and wanton conduct against defendants-EMTs), IV (negligence against defendants-EMTs), and VIII (*respondeat superior* against defendant-WFD).

The standards guiding our review of the trial court's decision to grant the defendants' sections 2—615 and 2—619 motions (735 ILCS 5/2—615, 2—619 (West 1992)) are clear. Section 2—615 of the Code provides for dismissal based on "defects in [the] pleadings" in that the complaint is "substantially insufficient in law." 735 ILCS 5/2—615 (West 1992). On review of a section 2—615 dismissal, we must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. *DiBenedetto*

*v. Flora Township*, 153 Ill. 2d 66, 69-70 (1992); *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083 (1994).

■ Section 2—619(a)(9) of the Code provides for dismissal if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1992). Thus, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. *T&S Signs, Inc.*, 261 Ill. App. 3d at 1083.

■ For purposes of sections 2—615 and 2—619 motions, all well-pleaded facts in the complaint are deemed admitted and only the legal sufficiency of the complaint is at issue. *Sisk v. Williamson County*, 167 Ill. 2d 343, 346 (1995); *Kubian v. Alexian Brothers Medical Center*, 272 Ill. App. 3d 246, 250 (1995). However, exhibits attached to the complaint become part of the complaint and will also be considered. *Abbott v. Amoco Oil Co.*, 249 Ill. App. 3d 774, 778-79 (1993). Thus, "the trial court may consider pleadings, depositions, and affidavits." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Further, an exhibit attached to a complaint controls, and a motion to dismiss does not admit allegations of the complaint if such allegations are in conflict with the facts disclosed in the exhibit. *Zedella*, 165 Ill. 2d at 185; *Abbott*, 249 Ill. App. 3d at 779. We review the granting of both sections 2—615 and 2—619 motions to dismiss *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993); *Joseph v. Collis*, 272 Ill. App. 3d 200, 206 (1995). "The question on appeal is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Zedella*, 165 Ill. 2d at 185-86, quoting *Kedzie*, 156 Ill. 2d at 116-17. We believe dismissal in this case was proper.

The plaintiff argues that neither section 2—201 of the Tort Immunity Act (745 ILCS 10/2—201 (West 1992)) nor section 1 of the Emergency Care Act (745 ILCS 20/1 (West 1992)) provides immunity for the defendants-EMTs. The plaintiff asserts that section 17(a) of the EMS Act (210 ILCS 50/17(a) (West 1992)) is the only immunity provision applicable to the defendants-EMTs. The defendants argue that the trial court correctly found that all three immunity provisions apply to the defendants-EMTs. We agree with the plaintiff.

■ In interpreting statutory language, we must give effect to the intent of the legislature. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194 (1992). The best indication of the legislature's intent is the language of the statute in question. *Hernon*, 149 Ill. 2d at 194. Thus, we will give clear and unambiguous terms their plain

and ordinary meaning. *Hernon*, 149 Ill. 2d at 194-95. Further, it is well established that, where there are two statutory provisions, one that applies to cases generally and another that is more specific and applies to the particular subject at issue, the more specific provision prevails. *Hernon*, 149 Ill. 2d at 195; *Zimmer v. Village of Willow-brook*, 242 Ill. App. 3d 437, 442 (1993). In addition, this is especially true where the specific provision was enacted more recently than the general provision. *Zimmer*, 242 Ill. App. 3d at 442.

■ Section 2—201 of the Tort Immunity Act, effective August 13, 1965 (1965 Ill. Laws 2983), provides in part:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1992).

Section 17(a) of the EMS Act, effective December 15, 1980 (Pub. Act 81—1518, eff. December 15, 1980), provides in part:

> "Any person *** licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services *** in the normal course of conducting their duties, *** shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions *** are inconsistent with the person's training or constitute willful or wanton misconduct." 210 ILCS 50/17(a) (West 1992) (repealed by Pub. Act 89—177, § 5, eff. July 19, 1995 (adding 210 ILCS 50/3.150 (West Supp. 1995)).

Section 1 of the Emergency Care Act, effective August 31, 1971 (Pub. Act 77—1377, eff. August 31, 1971), provides in part:

> "Any *** fireman as defined in Section 2 of the 'Law Enforcement Officers and Firemen Compensation Act', who in good faith provides emergency care without fee to any person shall not, as a result of his acts or omissions, except wilful and wanton misconduct on the part of such person, in providing such care, be liable to a person to whom such care is provided for civil damages." 745 ILCS 20/1 (West 1992).

After reviewing the language and purposes of the statutory provisions at issue, we determine that section 17(a) of the EMS Act applies to the case at bar. Section 17(a) of the EMS Act applies specifically to providers of emergency medical services (210 ILCS 50/2 (West 1992); *Gleason v. Village of Peoria Heights*, 207 Ill. App. 3d 185, 187-89 (1990)) and is the most recently enacted provision (Pub. Act 81—1518, eff. December 15, 1980). In contrast, section 2—201 of the Tort Immunity Act applies generally to public entities and public

employees (see 745 ILCS 10/1—101.1 (West 1992)) and became effective more than 15 years before section 17(a) of the EMS Act (section 2—201 of the Tort Immunity Act became effective August 13, 1965 (1965 Ill. Laws 2983)). Further, section 1 of the Emergency Care Act applies generally to law enforcement officers and firemen (745 ILCS 20/1 (West 1992)) and became effective over 19 years before section 17(a) of the EMS Act (section 1 of the Emergency Care Act became effective August 31, 1971 (Pub. Act 77—1377)). Therefore, we determine that section 17(a) of the EMS Act applies directly to the defendants-EMTs in the case at bar. *Hernon*, 149 Ill. 2d at 195.

The defendants cite *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 377 (1989), to support their argument that more than one immunity provision may apply to the same incident. The *Bowers* court merely held that two separate immunity provisions that are not mutually exclusive may apply to two different classes of defendants. *Bowers*, 183 Ill. App. 3d at 377. The *Bowers* court held that section 24—24 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—24 (now 105 ILCS 5/24—24 (West 1994))) provides immunity for the negligent conduct of teachers but does not provide immunity to negligent school districts. The court also found that negligent school districts are provided immunity by the Tort Immunity Act under the facts of the case.

Nothing in our decision in the case at bar contradicts this holding. The three immunity provisions at issue in the case at bar are mutually exclusive when applied to the same defendant. Section 2—201 of the Tort Immunity Act provides absolute immunity where a government employee exercises his discretion. 745 ILCS 10/2—201 (West 1992); *Johnson v. Mers*, 279 Ill. App. 3d 372, 380-81 (1996). Similarly, section 1 of the Emergency Care Act provides immunity to fire fighters for conduct other than wilful and wanton conduct. 745 ILCS 20/1 (West 1992). Conversely, section 17(a) of the EMS Act provides immunity to emergency medical technicians for conduct other than wilful and wanton conduct that is not beyond the scope of their training. 210 ILCS 50/17(a) (West 1992); *Gleason*, 207 Ill. App. 3d at 189. Thus, all three immunity provisions cannot apply to the same defendant in the alleged factual scenario.

Having decided that section 17(a) of the EMS Act is the only immunity provision applicable to the defendants-EMTs in the case at bar, we now address the nature and scope of such immunity. The plaintiff contends that section 17(a) of the EMS Act does not provide immunity for negligence. Further, the plaintiff argues that count IV sufficiently alleges facts that establish liability for negligence. Count IV of the plaintiff's second amended complaint alleges that the

defendants-EMTs "failed to use due care and caution to refrain from rendering emergency care beyond the level for which they are trained and to refrain from acting inconsistent with their training." The defendants claim that section 17(a) provides immunity to the defendants-EMTs for their alleged negligence. We agree with the defendants.

■ Section 17(a) of the EMS Act provides immunity for EMTs and those who negligently perform life support services, if such services are within the scope of their training. *Gleason*, 207 Ill. App. 3d at 189; see also *Affatato v. Jewel Cos.*, 259 Ill. App. 3d 787 (1994); *Yuretich v. Sole*, 259 Ill. App. 3d 311 (1994) (both courts held that section 17(a) of the EMS Act provides immunity to EMTs for ordinary negligence). In *Gleason*, the plaintiff became unconscious after he dove into a shallow area of a river and hit his head. The plaintiff alleged that his back and neck were injured during transit to the hospital when the defendants-EMTs in that case failed to immobilize the plaintiff's neck and back. The trial court granted summary judgment in the defendants' favor. *Gleason*, 207 Ill. App. 3d at 186. The Appellate Court, Third District, affirmed, finding that section 17(a) of the EMS Act provides immunity for EMTs who provide life support services that are not "beyond their level of training," regardless of the quality of their performance, except for wilful or wanton misconduct. *Gleason*, 207 Ill. App. 3d at 189. The court reasoned that it was irrelevant whether the defendants-EMTs immobilized the plaintiff's back and neck because they had been trained to perform the services they provided. *Gleason*, 207 Ill. App. 3d at 189.

In count IV of the plaintiff's second amended complaint in the case at bar, the plaintiff alleges a cause of action against the defendants-EMTs for negligently rendering emergency care to Randall above their level of licensure and negligently prescribing and administering an inappropriate course of treatment. However, the documents attached to the complaint establish that the services provided by the defendants-EMTs were commensurate with their advanced training. In addition, the pleadings demonstrate that all actions taken by the defendants-EMTs were authorized under the standing orders of the project medical director, which they were required to follow. 210 ILCS 50/4.01, 4.06, 19 (West 1992). Thus, based on the uncontroverted facts, the defendants-EMTs are immune from the alleged negligent performance of these acts. *Gleason*, 207 Ill. App. 3d at 189. Accordingly, the trial court properly dismissed count IV of the plaintiff's second amended complaint.

The plaintiff contends that the defendants-EMTs were not trained or authorized to determine when to start an IV or engage in a "dif-

ferential diagnosis." However, the plaintiff acknowledges in her complaint that the defendants-EMTs "have completed advanced training *** as required by the Statutory Provisions for EMT-Paramedic licensing." See 210 ILCS 50/4.13 (West 1992). Thus, pursuant to the EMS Act, the defendants-EMTs had authority to provide basic life support functions, including IV therapy. 210 ILCS 50/4.01, 11 (West 1992). In addition, the SOPs attached to the plaintiff's complaint establish that the defendants-EMTs were required to administer an IV. Further, the plaintiff has failed to allege sufficiently facts which establish that the defendants-EMTs made a diagnosis for which they could be liable. Thus, the plaintiff's argument fails.

■ The plaintiff also contends that the trial court erroneously dismissed count III of the plaintiff's second amended complaint, which alleged that the defendants-EMTs' actions were wilful and wanton. The plaintiff contends that she need only allege facts which, if taken as true, establish that the defendants-EMTs' conduct constituted "more than ordinary negligence." The defendants argue that the plaintiff's definition of wilful and wanton conduct is inaccurate. The defendants also claim that count III of the plaintiff's second amended complaint fails to allege such conduct. We agree with the defendants.

To plead wilful and wanton conduct sufficiently, a plaintiff must allege either:

> "[A] course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." *Pfister v. Shusta*, 167 Ill. 2d 417, 421-22 (1995), citing *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 273 (1994).

Further, the failure to discover impending danger through recklessness or carelessness, " 'when it could have been discovered by the exercise of ordinary care,' " may constitute wilful and wanton conduct. *Ziarko*, 161 Ill. 2d at 273, quoting *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583 (1946). However, the failure to discover " 'must have been *** committed under circumstances exhibiting a reckless disregard for the safety of others.' " *Ziarko*, 161 Ill. 2d at 273, quoting *Schneiderman*, 394 Ill. at 583.

The plaintiff supports her argument with statements contained in a letter and affidavit of Dr. Callaham, an alleged expert in emergency medicine, and Dan Williams, an experienced emergency medical technician and teacher. Dr. Callaham states in a letter, attached to the plaintiff's complaint, that the defendants-EMTs' conduct reflected "utter indifference and disregard for the safety of Mr. Brock." Similarly, Mr. Williams states in an affidavit attached to the

plaintiff's complaint that the defendants-EMTs' conduct was "so far below the accepted standard of care to such a degree it reflects a reckless disregard of the condition of Randall Brock."

The plaintiff fails to recognize that, while we must accept all well-pleaded facts as true, we may not accept conclusions of law or fact. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 456-57 (1995); *Joseph*, 272 Ill. App. 3d at 206. Because the statements cited by the plaintiff are conclusions relating to a question of law, we refuse to accept them as determinative.

After reviewing the pleadings and supporting documents, we determine that the defendants-EMTs provided extensive care to Randall. The EMTs arrived at the construction site only four minutes after the 9-1-1 emergency call was placed. Because Randall was unconscious, Young and Feltner had no information regarding his medical history or drug ingestion. They checked Randall's respiration, took his vital signs, checked his lungs, attempted to take his temperature, hooked him up to an EKG monitor, started an IV, administered oxygen, and called for additional help. The second team arrived 11 minutes after the first team. Four minutes later they placed Randall in the air-conditioned ambulance and began transporting him to a hospital. While in transport, the defendants-EMTs suctioned Randall's airway to remove vomit, listened to his lungs, started a second IV, did a "Chem Strip," contacted a designated resource hospital, attempted to intubate, as per request by the resource hospital, administered oxygen, did another "Chem Strip," took vital signs again, checked the EKG, attempted to take his temperature again, and attempted to elicit a response to painful stimuli. The defendants-EMTs delivered Randall to Good Shepherd Hospital 24 minutes after they arrived at the scene. While the defendants-EMTs' efforts may not have resulted in the desired outcome, we find that the pleadings fail to establish that their actions showed "an utter indifference to or conscious disregard for" Randall's safety. See *Pfister*, 167 Ill. 2d at 421-22.

The plaintiff alleges that the defendants-EMTs' conduct was wilful and wanton because they did not know the type of thermometer they used had a malfunction code which indicated that the patient's temperature was beyond the thermometer's scale. However, the plaintiff fails to allege facts that would establish that the defendants-EMTs' lack of knowledge was indicative of an utter indifference to Randall's safety. We determine that, although this may be sufficient to establish negligence, it is not sufficient to constitute wilful and

wanton misconduct. See *Golin v. Rukavina*, 209 Ill. App. 3d 547, 558 (1991) (defendant's lack of knowledge that the safety device on a gun malfunctioned was not enough to establish wilful and wanton conduct).

The plaintiff argues that the defendants-EMTs failed to transport Randall to the hospital quickly enough. The plaintiff argues that the defendants-EMTs should have transported Randall immediately. The plaintiff acknowledges, and the ambulance run report attached to the complaint establishes, that, during the time in question, the defendants-EMTs were attempting to assess and stabilize Randall by taking his vital signs and providing care. Such conduct is commensurate with the SOPs. Further, the SOPs reveal that the requirements for immediate transport or "load and go" were not apparent. Although the SOPs require immediate transport for patients with a "head injury," Randall did not have an apparent head injury. Thus, we do not believe this allegation establishes wilful and wanton conduct.

The plaintiff also argues that the defendants-EMTs should have known that Randall was suffering from a heat-related illness and should have treated him accordingly. The plaintiff contends that the defendants-EMTs' training provided them with the warning signs and treatment procedure consistent with heat-related illness. However, the plaintiff acknowledges and the SOPs reveal that there were no standing orders of procedure for heat-related illness. The SOPs also reveal that the defendants-EMTs provided the services required by them.

Further, the complaint and the ambulance run report establish that the defendants-EMTs provided numerous services in an attempt to assess and stabilize Randall, including taking his vital signs twice, checking his lungs twice, reading the EKG twice, attempting to take his temperature twice, calling for additional help, calling the appropriate hospital for further orders, and transporting him to an emergency room within 24 minutes from arrival at the scene. In light of such conduct, we believe that the plaintiff has failed to plead facts which are sufficient to establish that the defendants-EMTs engaged in wilful and wanton conduct. The fact that the defendants-EMTs failed to diagnose Randall with a heat-related illness is not sufficient to establish wilful and wanton conduct. As the plaintiff acknowledges, the defendants-EMTs were not permitted to diagnose patients. The defendants-EMTs were only permitted to follow the SOPs. It is quite unfortunate that in this instance the defendants-EMTs were unable to save Randall's life. However, "the legislature intended to encourage emergency response by trained medical person-

nel without risk of malpractice liability for every bad outcome or unfortunate occurrence." *Gleason*, 207 Ill. App. 3d at 188-89. Further, when a tragic event occurs, it is only with hindsight that one can see what might have been done to prevent the tragedy. However, we must evaluate the defendants-EMTs' conduct in light of the circumstances in which they found themselves and not under the unassailable illumination of hindsight. Thus, the trial court correctly dismissed count III of the plaintiff's second amended complaint.

In her reply brief, the plaintiff cites *Yuretich*, 259 Ill. App. 3d 311, to support her argument that her complaint alleges facts sufficient to plead that the defendants-EMTs' conduct was wilful and wanton. We believe *Yuretich* is easily distinguishable from the case at bar. In the case at bar, the plaintiff attached documents to her complaint that contradict her allegations. Conversely, in *Yuretich*, there is nothing to indicate that the allegations in the complaint were controverted by anything attached to the complaint.

■ Finally, we determine that count VIII against the defendant-WFD was properly dismissed. Section 2—109 of the Tort Immunity Act provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1992). Having concluded that the trial court properly dismissed plaintiff's claims against the defendants-EMTs, we now determine that count VIII against the defendant-WFD alleging liability under the theory of *respondeat superior* was properly dismissed.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.