July 6, 1998

No. 2--97--0847

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

NORTHERN ILLINOIS HOME BUILDERS       ) Appeal from the Circuit 

ASS'N; GALLANT HOMES, INC.; THE       ) Court of Kane County.

KRUGHOFF COMPANY; SHO DEEN, INC.;   )

JOE KEIM BUILDERS, INC.; KEIM         )

CORPORATION; and HAVLICEK BUILDERS,   )

INC.,   )

                                      )

Plaintiffs-Appellants,           ) No. 92--MR--0013

                                      )

v.                                  )

                                      ) 

THE CITY OF ST. CHARLES,              )

                                      )

Defendant-Appellee               ) Honorable

   ) R. Peter Grometer and

(John R. Hall & Sons, Inc.,   ) Timothy Q. Sheldon,

Plaintiff).   ) Judges, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs Gallant Homes, Inc.; The Krughoff Company; Sho Deen, Inc.; Joe Keim Builders, Inc.; Keim Corporation; and Havlicek Builders, Inc., (collectively the Builders) and plaintiff Northern Illinois Home Builders Association appeal the trial court’s dismissal of the plaintiffs' second amended complaint seeking a declaratory judgment that the defendant's ordinances mandating an electric service connection fee is unconstitutional and invalid.  We reverse in part, affirm in part, and remand for further proceedings.

Since 1892, the defendant, the City of St. Charles, a non-home-rule municipality, has operated its own electric utility system.  The defendant, the sole provider of electrical current to residences within St. Charles, buys electrical energy from Commonwealth Edison at wholesale and distributes electricity to customers through facilities owned by the defendant. The defendant’s electric utility system is financed by retained earnings, not by bonds.  Prior to 1972 the cost of connecting new customers to the system was paid for by the income from the sale of electric energy.

In 1990 the defendant adopted ordinance 1990-M-36 (the old ordinance) (St. Charles Municipal Code §13.08.150 (passed April 16,  1990)), which provided that the cost of connecting new customers to the system would be paid for by the new customers.  Under this old  ordinance, new customers paid one charge, which was based on standard increments of service capacity, 
i.e.
, $1,200 for 100 amps, $2,400 for 200 amps, $4,800 for 400 amps.  

In counts I and II, the plaintiffs alleged that the Builders built single-family residential homes within the defendant’s corporate borders.  The plaintiffs alleged that the Builders paid the connection fees assessed by the defendant when they obtained building permits.  The complaint also alleged that the Builders had an ownership interest in the property when they paid the connection fees.  Further, all the Builders, except The Krughoff Company and Havlicek Builders, Inc., alleged that they continued to have a property interest in the homes in which they paid the connection fees.  The plaintiffs sought a declaration from the court that the old ordinance was invalid and an order for the return of the fees with interest.

On January 7, 1992, the plaintiffs and John R. Hall & Sons, Inc., filed a complaint for declaratory judgment against the defendant.  The complaint challenged the validity and constitutionality of the defendant’s ordinance.  The trial court denied the defendant’s motion to dismiss, but then 
sua sponte
 requested that the plaintiffs and John R. Hall & Sons, Inc., amend their complaint.  The plaintiffs and John R. Hall & Sons, Inc., filed an amended complaint for declaratory judgment on December 16, 1992.  On December 21, 1992, the defendant adopted the new ordinance.

On December 21, 1992, the defendant adopted ordinance 1992-M-71 (the new ordinance) (St. Charles Municipal Code §13.08.135 (passed December 21, 1992)), which amended the old ordinance and charged new customers two separate charges for connection, namely, a service origination charge "of $1,500 plus four and one-half percent (4½%) per annum from January 1, 1993 until paid" and a service enrollment charge.  The service origination charge is the cost of the hookup from the individual lot to the electrical facilities within the subdivision.  The service enrollment charge is the cost of the hookup from the subdivision to a transformer, plus the cost of processing a service application.  The defendant passed the new ordinance in reliance on a study that revealed that the connection charge under the old ordinance did not cover the actual costs of connecting new customers to the system.  As a result, the existing ratepayers bore some of the connection costs. 

On December 20, 1993, the plaintiffs and John R. Hall & Sons, Inc., filed their second amended complaint for declaratory judgment, challenging the validity of both the new and old ordinances.  The plaintiffs and John R. Hall & Sons, Inc., repeated counts I and II contained in their amended complaint and alleged in counts III and IV that, from December 21, 1992, through July 16, 1997, the Builders continued to build single-family residential homes within the defendant’s corporate borders.  The plaintiffs and John R. Hall & Sons, Inc., further alleged that the Builders paid the connection fees in accordance with the new ordinance and that if they did not pay the connection fees under both the old and new ordinances they would not be able to obtain a building permit, resulting in a disastrous effect on their business.  Thus, they paid the fees under protest, compulsion, and duress.  

The defendant filed an answer to the second amended complaint and on January 26, 1995, filed a section 2--619(a)(9) motion (735 ILCS 5/2--619(a)(9) (West 1994)) to dismiss counts I and II of the complaint, alleging that the plaintiffs lacked standing to challenge the validity and constitutionality of the old ordinance and that the repeal of the old ordinance rendered the counts moot.  The motion to dismiss also sought the dismissal as  plaintiffs of Northern Illinois Home Builders Association and John R. Hall & Sons, Inc., alleging that they had no standing because they had not paid a connection fee.

The plaintiffs and John R. Hall & Sons, Inc., filed a motion to strike the defendant's motion to dismiss, arguing that the defendant’s motion was untimely.  On May 9, 1995, after a hearing, the trial court denied the motion to strike the defendant’s motion to dismiss and granted the defendant’s motion to dismiss counts I and II of the complaint based on the plaintiffs' and John R. Hall's lack of standing.  The trial court also dismissed Northern Illinois Home Builders Association from all counts for lack of standing and granted John R. Hall & Sons’ motion to voluntarily dismiss.   

On June 8, 1995, the defendant filed a motion for partial summary judgment pursuant to section 2--1005 of the Code of Civil Procedure (735 ILCS 5/2--1005 (West 1994)).  The motion, directed at the remaining counts III and IV, addressed the sole issue of whether the defendant had the statutory authority to enact and impose electrical connection fees under the new ordinance.  The plaintiffs filed a cross-motion for partial summary judgment.

After a hearing on February 29, 1996, the trial court granted the defendant's motion for partial summary judgment and denied the plaintiffs’ motion for partial summary judgment.  The findings were set forth in a letter opinion.  On March 18, 1996, the trial court entered an order reflecting its findings.

On July 16, 1996, the defendant amended its motion for summary judgment directed at the remaining issue of whether the connection fee was reasonable.  The trial court granted the motion and dismissed all counts of the plaintiffs’ second amended complaint with prejudice.  The plaintiffs timely filed this appeal.

Initially, we address the plaintiffs' motion to strike portions of the defendant's brief.  The plaintiffs urge us to strike the portion of the defendant's brief that espouses the theory that a contract existed in which the Builders impliedly agreed to pay the connection fee.  The plaintiffs argue that the defendant failed to raise the contract issue in the trial court  and failed to file complete certified copies of the old and new ordinances.

It is well settled that an appellee may urge any point in support of the judgment on appeal that is supported by the record without regard to whether the point was raised before the trial court.  
Mayfield v. ACME Barrel Co.
, 258 Ill. App. 3d 32, 37 (1994).  In defendant's motion for partial summary judgment and motion for summary judgment, the defendant alleged that it had the authority to pass the new ordinance.  The defendant then attached the procedures used by the defendant in providing electric service.  The procedure includes the acceptance of a contract by customers seeking connection to the electric utility service.  In addition, the defendant attached two such contracts between the defendant and Joe Keim Builders, Inc., and Sho Deen, Inc.  Because the record contains support for the defendant's argument regarding a contract, we deny the plaintiffs’ motion to strike this portion of the defendant's brief.

Next, the plaintiffs urge us to strike the portion of the St. Charles Municipal Code that provides that the rules and regulations contained in the ordinance will be part of contracts with customers who purchase electricity from the defendant.  An appellate court may take judicial notice of an ordinance raised on appeal by an appellee even though the appellee failed to raise the ordinance in the trial court.  
Szczurek v. City of Park Ridge
, 97 Ill. App. 3d 649, 658 (1981); 735 ILCS 5/8--1001, 8--1002 (West 1996).  
Thus, we deny the plaintiffs' motion to strike this portion of the defendant's brief.  

Lastly, the plaintiffs urge us to strike the portion of the defendant's brief that discusses a trial court decision, West v. Batavia, No. 84--MR--213 (Cir. Ct. Kane Co.). In deciding this case below, the trial court cited No. 84--MR--213 and adopted its reasoning. Because the case is contained in the record and the defendant does not claim that it is binding upon this court, we deny the plaintiffs' motion to strike the portion of the defendant's brief that discusses this case.  We now address the merits of the plaintiffs' appeal.

The standard guiding our review of the trial court's decision to grant the defendant’s section 2--619 motions (735 ILCS 5/2--619 (West 1994)) is clear.  Section 2--619(a)(9) of the Code of Civil Procedure provides for dismissal if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619 (West 1994).  Thus, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim.  
Brock v. Anderson Road Ass'n
, 287 Ill. App. 3d 16, 21 (1997). 
 
  

For purposes of section 2--619 motions, all well-pleaded facts in the complaint are deemed admitted (
Sisk v. Williamson County
, 167 Ill. 2d 343, 346 (1995)), and only the legal sufficiency of the complaint is at issue
 (
Brock
, 287 Ill. App. 3d at 21).  However, exhibits attached to the complaint become part of the complaint and will also be considered.  
Brock
, 287 Ill. App. 3d at 21.
  Thus, "the trial court may consider pleadings, depositions, and affidavits."  
Zedella v. Gibson
, 165 Ill. 2d 181, 185 (1995).  
Further, an exhibit attached to a complaint controls, and a motion to dismiss does not admit allegations of the complaint if such allegations are in conflict with the facts disclosed in the exhibit. 
 
Brock
, 287 Ill. App. 3d at 21.
 
 We review the granting of a section 2--619 motion to dismiss 
de novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993); 
Brock
, 287 Ill. App. 3d at 21.
  "The question on appeal is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' "  
Zedella
, 165 Ill. 2d at 185-86, quoting 
Kedzie
, 156 Ill. 2d at 116-17. 

First, the plaintiffs argue that the trial court erred by dismissing counts I and II for lack of standing.  The plaintiffs argue that, since the Builders paid taxes under the old ordinance and now assert that the ordinance was invalid, they have presented a justiciable issue.  The defendant argues that the Builders lack standing because they admitted in an interrogatory that they sold the homes for which they paid the connection fee under the old ordinance and offered no evidence that they retained the right to a refund.  We agree with the plaintiffs.

The doctrine of standing seeks to insure that courts decide actual controversies and not abstract questions.  
People v. $1,124,905 U.S. Currency and One 1988 Chevrolet Astro Van
,  177 Ill. 2d 314, 328 (1997).  It is well established that a court may not address the constitutionality of a statute unless the party challenging the statute has standing to challenge it.  
People v. Capitol News, Inc.
, 137 Ill. 2d 162, 169 
(1990).  A plaintiff seeking a declaratory judgment has standing to challenge the constitutionality of a statute if he presents an actual controversy in which he is an interested party with a personal claim, status, or right.  
Kluk v. Lang
, 125 Ill. 2d 306, 314 (1988).  The requirement that a controversy be "actual" is meant to insure that the underlying facts and issues of the case are not moot or premature, but it is not meant to preclude a valid controversy from being litigated.  
Messenger v. Edgar
, 157 Ill. 2d 162, 170-71 (1993).
  In addition, the plaintiff "must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the challenged statute."  
Messenger
, 157 Ill. 2d at 171.  Further, the grant of the declaratory judgment must be substantially likely to prevent or redress such injury.  
Messenger
, 157 Ill. 2d at 170.  

The plaintiffs alleged in their second amended complaint that the Builders paid the connection fees under the old ordinance.  Although we have not found a case that expressly states that a party who paid an allegedly invalid charge or tax has standing to challenge the charge or tax, this can be inferred by our supreme court's decision in 
Northern Illinois Home Builders Ass'n, Inc. v. County of Du Page
, 165 Ill. 2d 25 (1995).

In
 
Northern Illinois Home Builders Ass'n
, our supreme court addressed the constitutionality of fees paid by one of the plaintiffs and exacted by the defendants pursuant to the challenged ordinances.  The court addressed the merits of the case without addressing the issue of standing, held that the fee at issue was invalid, and ordered that the monies collected be returned to a home builder who paid the fee.  
Northern Illinois Home Builders Ass'n
, 165 Ill. 2d at 50.  Because a court may not address the constitutionality of a statute unless the party challenging the statute has standing, we infer from the court's decision that the plaintiffs in 
Northern Illinois Home Builders Ass'n
 had standing.  See  
Capitol News
, 137 Ill. 2d at 169.  

Further, according to 
Northern Illinois Home Builders Ass'n
, if the old ordinance is held invalid, the Builders in this case will be entitled to a refund.  See 
Northern Illinois Home Builders Ass'n
, 165 Ill. 2d at 35-36.  Thus, the Builders have sustained a direct injury as a result of the enforcement of the challenged ordinance, and 
the grant of the declaratory judgment will redress such injury.  See 
Messenger
, 157 Ill. 2d at 170.  Accordingly, the Builders have standing to challenge the constitutionality and validity of the old ordinance, and the trial court's decision to grant the defendant's motion to dismiss counts I and II for lack of standing was improper.  

Citing 
Bishop v. Village of Brookfield
, 99 Ill. App. 3d 483 (1981) and 
Vulcan Materials Co. v. County of Will
, 61 Ill. App. 3d 925 (1978), the defendant argues that the Builders do not have standing because they sold the homes for which they paid the connection fees under the old ordinance.  According to the defendants, since the Builders failed to reserve their rights to a refund, the right passed to the subsequent purchasers of the homes.  The cases cited by the defendant were also relied on by the trial court in reaching its decision.  However, these cases are distinguishable from the case at bar.

In 
Bishop
, the appellate court permitted homeowners to intervene in a case in which the builders of the homes sought a refund of sewer connection fees assessed by the village and paid by the builders at the time of construction.  It was uncontroverted that the builders sold the homes that were subject to the sewer connection fee.  The court reasoned that the new homeowners and not the builders would receive a refund if the new homeowners established that the builders recouped the connection fees when they sold the homes.  
Bishop
, 99 Ill. App. 3d at 491.  However, the court denied the village’s motion to substitute the new homeowners in place of the builders.  
Bishop
, 99 Ill. App. 3d at 493.  Thus, the builders still had standing.  The case was remanded to the trial court to determine whether the fee was invalid and who should receive the refund.  
Bishop
, 99 Ill. App. 3d at 492-93.  

Thus, according to 
Bishop
, the Builders in this case have a right to seek a refund and have standing until it is proved that they somehow transferred or assigned their right to another.  Further, as in 
Bishop
, the fact that the Builders in this case sold the homes at issue does not, in itself, prove that they lost their right to seek a refund.  Because the defendant has failed to establish that the Builders recouped the connection fees from the homeowners or otherwise assigned their right, 
Bishop
 does not support the defendant's assertion that the Builders in this case lack standing.  See 
Bishop
, 99 Ill. App. 3d at 490-91.

In addition, 
Vulcan Materials Co.
 does not support the defendant's argument.  In 
Vulcan
, the trial court found that the plaintiffs, owners of certain land, established a nonconforming use for quarrying purposes and enjoined the county from interfering with the quarry.  
Vulcan Materials Co.
, 61 Ill. App. 3d at 925.  While the appeal was pending, the property was taken from the plaintiffs in an eminent domain proceeding.  
Vulcan Materials Co.
, 61 Ill. App. 3d at 926.  Because the plaintiffs no longer owned the property at issue, the appellate court held that the case was moot and the plaintiffs no longer had standing. 
Vulcan Materials Co.
, 61 Ill. App. 3d at 926-27.  

Vulcan
 is inapplicable to the case at bar because the plaintiff in that case sought a determination that it could use its property for a certain purpose.  Without ownership of the property, the plaintiff had no interest in the controversy.  The outcome of the case would not have been a benefit or detriment to the plaintiff.  However, if the connection fee at issue in this case is found to be invalid, the Builders will be entitled to a refund.  See 
Northern Illinois Home Builders Ass'n
, 165 Ill. 2d at 35-36.  Thus, 
Vulcan
 does not apply to this case.  

Next, the plaintiffs argue that the trial court erred by (1) granting the defendant's motion for partial summary judgment, finding that the defendant had the authority to enact the new ordinance; and (2) granting the defendant's amended motion for summary judgment and dismissing counts III and IV of the plaintiffs’ second amended complaint. Regarding the validity of the new ordinance, the plaintiffs alleged only that the defendant lacked the legislative authority to charge connection fees.  Because the plaintiffs did not allege that the ordinance was not reasonable, we will not address that issue.

Summary judgment is proper where the pleadings, exhibits, affidavits, and depositions on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996); 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 530 (1996).
  A motion for summary judgment and its supporting documents must be construed "strictly against the moving party and liberally in favor of the opponent."  
O'Banner v. McDonald's Corp.
, 173 Ill. 2d 208, 211 (1996)
.  We review a trial court's decision to grant or deny a motion for summary judgment 
de novo
.  
Olson v. Etheridge
, 177 Ill. 2d 396, 404 (1997).

Defendant is a non-home-rule unit and therefore is governed by "Dillon's Rule."  Dillon's Rule provides that non-home-rule units possess only those powers (1) expressly granted to them by the Illinois Constitution or by statute; (2) incident to those expressly granted; and (3) indispensable to the accomplishment of the declared objectives of the non-home-rule unit.  
Commonwealth Edison Co. v. City of Warrenville
, 288 Ill. App. 3d 373, 380 (1997).

In interpreting statutory language, we must give effect to the intent of the legislature.  
People v. Britz
, 174 Ill. 2d 163, 196 (1996).  The best indication of the legislature's intent is the language of the statute in question.  
Hernon v. E.W. Corrigan Construction Co.
, 149 Ill. 2d 190, 194 (1992).  Thus, we will give clear and unambiguous terms their plain and ordinary meaning.  
Britz
, 174 Ill. 2d at 194-95.  

The legislature granted municipalities the power to own and operate public utilities in accordance with section 11--117--1 of the Illinois Municipal Code (Municipal Code).  That section provides:

"Subject to the provisions of this Division 117, any municipality may (1) acquire, construct, own and operate within the corporate limits of the municipality any public utility the product or service of which, or a major portion thereof, is or is to be supplied to the municipality or its inhabitants and may contract for, purchase and sell the product or service of any such utility; *** (4) fix the rates and charges for the product sold and the services rendered by any such public utility; and (5) make all needful rules and regulations in relation thereto."  65 ILCS 5/11--117--1 (West 1992).

The defendant's new ordinance levies a fee for the connection of new residential homes to the defendant's existing electrical utility system.  The fee is a "charge" for the connection service provided by the defendant.  Section 11--117--1 permits municipalities to charge for the services it renders for customers of an electric utility.   65 ILCS 5/11--117--1 (West 1992).  Thus, the defendant had the authority to enact the new ordinance.  

The plaintiffs argue that sections 11--119--1 and 11--119--3 prohibit municipalities from charging connection fees to their electric utility systems.  Sections 11--119--1 and 11--119-3 provide in pertinent part:

"Every city or village owning and operating its electric, light plant and system *** may pay for improving, enlarging or extending the plant and system by the issuance and sale of revenue bonds."  65 ILCS 5/11--119--1 (West 1992).

"Whenever bonds are issued under this Division 119, sufficient revenue received thereafter from the operation of the electric light plant and system, *** to pay the cost of maintenance and operation of the plant and system, and the principal of and interest on all obligations payable from the revenues of such plant and system, including the bonds issued hereunder, without limiting the generality of the foregoing, shall be deposited in a separate fund ***.  This fund shall be used only in paying (1) the cost of maintenance and operation of the plant and system, (2) principal of and interest upon obligations, in whatever form, of the municipality theretofore issued that are payable by their terms from this revenue, and (3) bonds issued under this Division 119."  65 ILCS 5/11-119--3 (West 1992).

The plaintiffs argue that the above sections govern the issue before us because they are more specific than sections 11--117--1 and 11--117--3. The plaintiffs claim that section 11-119--3 provides that the only way the defendant may extend or enlarge its electric utility system is to issue bonds.  The plaintiffs argue that, since the new ordinance mandates the payment of extension or enlargement of its service by means other than issuing bonds, the new ordinance is invalid.  We disagree with the plaintiffs.

We recognize that, where there are two statutory provisions, one that applies to cases generally and another that is more specific and applies to the particular subject at issue, the more specific provision prevails.  
McDunn v. Williams
, 156 Ill. 2d 288, 309  
(1993).
  We also acknowledge that a more recent statute takes precedence over an earlier statute.  
Williams v. Illinois State Scholarship Comm'n
, 139 Ill. 2d 24, 57-58 (1990).  However, in this case, the more specific provision (65 ILCS 5/11--119--3 (West 1992)) does not prohibit the defendant's enactment of the new ordinance.  

Section 11--119--1 permits municipalities to "pay for improving, enlarging, or extending" their electric utility plant and system by issuing and selling bonds.  65 ILCS 5/11--119--1 (West 1992).  Nothing in the provision prohibits other methods or payment.  The provision simply permits the issuance of bonds and then mandates limitations regarding this method of raising money.   65 ILCS 5/11--119--3 (West 1992).  

Next, the plaintiffs assert that under section 11--119--3 connection costs must be paid through rates charged for electric current only.  The plaintiffs argue that, since the new ordinance provides for the payment of connection costs by another method, it is invalid.  Section 11--119--3 provides in pertinent part:

"Rates charged for electric current *** shall be sufficient to pay the cost of 
maintenance and operation
 and to pay the principal of and interest upon all of the specified bonds and obligations."  (Emphasis added.)  65 ILCS 5/11-119--3 (West 1992).

The plaintiffs ignore the plain and ordinary meaning of this provision.  "Maintenance" means "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency."  Webster's Third New International Dictionary 1362 (1993).  "Operation" means "the operating of or putting and  maintaining in action of something (as a machine or an industry)."  Webster's Third New International Dictionary 1581 (1993).  In other words, maintenance and operation as used in section 11-119--3 mean keeping the electric utility system running and in a state of repair.  However, the connection fee mandated by the new ordinance does not pay for the costs of maintenance or operation; rather, it pays for the cost of connecting new customers to the defendant's electric utility system.  Thus, nothing in section 11-119--3 invalidates the defendant's new ordinance. 

Next, the plaintiffs argue that if we hold that sections 11--117--1 and 11--117--3 (65 ILCS 5/11--117--1, 11--117--3 (West 1992)) authorize connection fees for electric utility service, then section 11--150--1 of the Municipal Code (65 ILCS 5/11--150--1 (West 1992)) is rendered meaningless and superfluous.  We disagree.

Section 11--150--1 of the Municipal Code grants municipalities the authority to charge for the connection to their water and sewer systems.  (65 ILCS 5/11--150--1 (West 1992)).  The section provides in pertinent part:

"The corporate authorities of any municipality operating a waterworks, sewerage or combined waterworks and sewerage system have the power by ordinance to collect a fair and reasonable charge for connection to any such system in addition to those charges covered by normal taxes, for the construction, expansion and extension of the works of the system, the charge to be assessed against new or additional users of the system and to be known as a connection charge, except that no connection or water usage charge shall exceed the actual cost required for the installation or usage of an automatic sprinkler system."  65 ILCS 5/11--150--1 (West 1992).

The plaintiffs fail to recognize that this provision, enacted in 1967 (1967 Ill. Laws 2805 (§1)), codified the portion of 
Norwick v. Village of Winfield
, 81 Ill. App. 2d 197 (1967), that held that a connection fee can be collected for the use of municipal water and sewerage systems.  
Estate of Besinger v. Village of Carpentersville
, 258 Ill. App. 3d 218, 229 (1994).  Thus, by enacting section 11--150--1, the legislature 
expressly authorized what had already been impliedly authorized; it did not preclude the extension of 
Norwick
 to other municipal systems.  

The plaintiffs argue that 
Norwick
 is not applicable to the ordinance at issue in this case, because in 
Norwick
 the legislature had granted municipalities " 'owning, acquiring, or constructing and providing for the operation of a combined waterworks and sewerage system' " the power to " '
improve and extend
' that system."  (Emphasis added.)  
Norwick
, 81 Ill. App. 2d at 199-200, quoting Ill. Rev. Stat. 1965, ch. 24, par. 11--139--2.  According to the plaintiffs, because the legislature has not expressly authorized municipalities owning electric utility systems the power to improve and extend their systems, 
Norwick
 does not apply to the case at bar.

However, the plaintiffs ignore that this court previously interpreted language similar to that which is contained in sections 11--117--1 and 11--117--3 as authorizing a connection fee for municipal utilities.  In 
Rosborough v. City of Moline
, 30 Ill. App. 2d 167 (1961), the City of Moline enacted an ordinance that provided:

" 'The following rules and regulations shall be considered a part of the contract with every consumer of City Water and said consumer shall be governed by and subject to the following rules and regulations.' "  
Rosborough
, 30 Ill. App. 2d at 172--73, quoting from section 5 of "An ordinance creating a water department of the City of Moline, Illinois, and providing for the supervision and management of any and all property and matters pertaining thereto" (passed December 16, 1935).  

The ordinance also provided that the cost of installing and repairing connecting pipes to a property will be paid for by the property owners.  
Rosborough
, 30 Ill. App. 2d at 171.  This court stated that, since the property owner chose to use and receive the municipality’s water, he impliedly agreed to the reasonable regulations regarding such use.  
Rosborough
, 30 Ill. App. 2d at 179.  This court held that the City of Moline's ordinance was reasonable and authorized by the legislature by the following statutory language:

" 'The corporate authorities have the power 
to make all needful rules and regulations
 concerning the use of water supplied by the waterworks of the city or village, and to do all acts and 
make such rules and regulations
 for the construction, completion, management, or control of the waterworks, and for the fixing and collecting of such water rates or rents 
as the corporate authorities may deem necessary or expedient
.' " (Emphasis added.)  
Rosborough
, 30 Ill. App. 2d at 178, quoting Ill. Rev. Stat. 1959, ch. 24, par. 74--3. 

Quoting the language emphasized above, this court stated that the City of Moline validly exercised its power by enacting the ordinance at issue.  
Rosborough
, 30 Ill. App. 2d at 184. 

The language of the authorizing statute in 
Rosborough
 is similar to the language contained in the statute at issue in the case at bar.  Section 11--117--1 of the Municipal Code authorized defendant to "acquire, construct, own and operate *** any public utility" (65 ILCS 5/11--117--1(1) (West 1992)), "fix the rates and charges for the product sold and the services rendered" (65 ILCS 5/11--117--1(4) (West 1992)), and "
make all needful rules and regulations in relation thereto
."  (Emphasis added.) (65 ILCS 5/11--117--1(5) (West 1992)).  Thus, following the reasoning of 
Rosborough
, section 11--117--1 grants the defendant the authority to charge property owners a fee for connecting their homes to the defendant’s electrical utility system.  

 The plaintiffs also assert that, because the new ordinance states that its authority derives from section 11--119--3, it may not now deny that it relied on this section.  The plaintiffs ignore the fact that the ordinance also states that its authority derives from section 11--117--1 and the common law.  Thus, this argument lacks merit.

Accordingly, we reverse the trial court's dismissal of counts I and II of the plaintiffs’ second amended complaint based upon the Builders' lack of standing.  Further, we remand Counts I and II to the trial court for disposition on the merits.  We affirm the trial court's dismissal of counts III and IV of all the plaintiffs’ second amended complaint.  

The judgment of the circuit court of Kane County is reversed in part and affirmed in part, and the cause is remanded for further proceedings with respect to counts I and II.

Affirmed in part and reversed in part; cause remanded.

GEIGER, P.J., and INGLIS, J., concur.