EDWARD GLEASON, Plaintiff-Appellant, v. THE VILLAGE OF PEORIA HEIGHTS *et al.*, Defendants-Appellees.

Third District   No. 3—89—0623

Opinion filed November 13, 1990.—Rehearing denied January 29, 1991.

John E. Cassidy III, of Cassidy & Mueller, of Peoria (David B. Mueller, of counsel), for appellant.

Paul P. Gilfillan, of Quinn, Johnston, Henderson & Pretorius (Murvel Pretorius, Jr., of counsel), for appellee Village of Peoria Heights.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Edward Gleason brought an action to recover for injuries received in a diving accident which resulted in quadriplegia. The circuit court of Peoria County entered summary judgment in favor of the defendant, the Village of Peoria Heights, as to two counts of the amended complaint.

The record on appeal indicates that plaintiff and friends had been watching boat races from the beach and dock on the premises of Barnacle Billy's Beach Club, a tavern located in Peoria Heights, Illinois, for several hours when plaintiff dived off the dock into the Illinois River on June 11, 1983. The water near the dock was shallow, and plaintiff was seen floating and unconscious in the water. Plaintiff was pulled from the water by friends and given mouth-to-mouth resuscitation by a registered nurse who was present. Help was summoned, and when the rescue squad of the defendant village arrived, the emergency medical technicians (EMTs) took over the resuscitation efforts. The EMTs placed plaintiff on a spine board before moving him up the sloping beach to the ambulance and transporting him to St. Francis Hospital in Peoria.

Witnesses disagree as to the exact procedures used to prepare plaintiff for transport. According to two of the EMTs, plaintiff's head was immobilized by placing elongated sandbags on either side of his head and neck and placing a strip of adhesive tape across his forehead and attaching it to both sides of the spine board. A third EMT had no recollection of what was done to immobilize plaintiff's head. A close friend of plaintiff, who had pulled plaintiff from the water, stated that plaintiff's head was not stabilized at the scene or when he was removed from the ambulance at the hospital.

According to the deposition of an expert witness, neurologist David Schreiber, M.D., the emergency room records indicate that plaintiff's neck "was apparently not immobilized in transit." Medical expert witnesses testified that the failure to immobilize plaintiff's head during transportation to the hospital would cause additional injury to the spinal cord and would aggravate the resulting paralysis.

It is not disputed that the training received by the EMTs specified the use of a collar, sand bags, or other device to immobilize the neck of a patient with a suspected neck or spinal cord injury. It is also not disputed that the persons who served as volunteers on the defendant's rescue squad were each trained and certified as an EMT-A and thus

were qualified to provide basic life support services, including prehospital care, such as airway management, cardiopulmonary resuscitation, control of shock and bleeding and splinting of fractures (Ill. Rev. Stat. 1987, ch. 111½, par. 5504.06), before and during transportation of such patients to hospitals (Ill. Rev. Stat. 1987, ch. 111½, par. 5504.16).

The Emergency Medical Services Systems Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 5501 *et seq.*) is designed to provide the State with a system for emergency medical services. In addition to EMT-A certification, the State also licenses an intermediate level (EMT-I) and an advanced (paramedic) level (EMT-P), with the latter able to perform such functions as cardiac defibrillation, intravenous therapy, administration of antiarrhythmic agents, medications, drugs, and solutions, and other techniques and procedures. The Act provides that persons currently certified as an EMT-A, EMT-I, and EMT-P may provide life support services according to the level of their certification.

The determinative issue in this case is the applicability of section 17 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 5517), which provides in part:

"(a) Any person, agency or governmental body certified or authorized pursuant to this Act or rules thereunder, who in good faith provides life support services * * * in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing such services unless such acts or omissions * * * are inconsistent with the person's training or constitute willful or wanton misconduct."

Plaintiff has alleged in count I that defendant village, acting through its duly authorized agents and employees, permitted willful and wanton acts and omissions in handling and transporting plaintiff in that it willfully and wantonly failed to immobilize the neck and back of plaintiff so as to prevent further injury and disability. Count I is not involved in this appeal.

Count II alleged the same acts and omissions without reference to willful and wanton misconduct and adds that such acts and omissions are "inconsistent with their training." Count X characterized the same acts and omissions as negligent. Both counts II and X recited that they were brought pursuant to section 17 of the Act (quoted above).

Defendant, in addition to a general denial, filed an affirmative defense asserting that each member of the emergency squad "performed services that they were trained to perform and which services were consistent with their training as certified medical technicians under the Emergency Medical Services Systems Act."

After extensive discovery, defendant sought summary judgment as

to counts II and X, attaching an affidavit of an expert medical witness, John Ruthman, M.D., that the services performed by the EMTs for plaintiff "are the types of services that EMT-As are trained to render to injured persons at an accident scene and in transport to a trauma center." The trial court entered summary judgment for defendant with a finding pursuant to Supreme Court Rule 304 (107 Ill. 2d R. 304) that there was no just reason for delaying this appeal.

During oral argument before this court, defendant argued and plaintiff agreed that section 17 of the Emergency Medical Services Systems Act does not authorize or create a cause of action but rather provides for immunity from liability. Plaintiff thus conceded that the attempt to plead a cause of action derived from the statute in count II was not appropriate. Thus, we are only concerned with the cause of action for negligence set forth in count X.

Plaintiff contends that the trial court ignored the plain meaning of section 17 when it found the village not liable even though there was a disputed question of fact as to whether the EMTs acted in a manner consistent with their training. Plaintiff argues that the statute provides for immunity from liability only when the negligent acts or omissions are not inconsistent with the EMT training. Since their training mandated immobilization of the patient's head and neck when a spinal cord injury is suspected, failure to immobilize plaintiff's head would be an act or omission not protected by the immunity provision. Plaintiff suggests that the defendant would be immune from liability if the EMTs had accidentally turned the patient's head while taping it to the board, but there would be no immunity for failing to tape it at all.

■ We have previously stated the basic rules of statutory construction as follows:

> "The foremost consideration of a court's construing a statute is to give effect to the intent of the legislature. [Citation.] In ascertaining the legislative intent, a court of review considers the language used, the evil to be remedied, and the object to be obtained. [Citation.]" *People v. Naseef* (1984), 127 Ill. App. 3d 70, 72, 468 N.E.2d 466.

■ The Emergency Medical Services Systems Act expressly states that the intent of this legislation is to provide Illinois a system for emergency medical services by establishing a central authority to coordinate and integrate the planning, evaluation, and regulation of prehospital emergency medical services systems. With that general purpose in mind, we are persuaded that by enactment of the immunity provision, the legislature intended to encourage emergency response by trained medical personnel without risk of malpractice liability for

every bad outcome or unfortunate occurrence. Emergency situations are often fraught with tension, confusion, and, as here, difficult physical locations for giving medical care. Emergency personnel must not be afraid to do whatever they can under less than ideal circumstances.

Obviously the trial court found that immunity applies where EMTs are providing the level of life support service which they have been trained to provide regardless of the quality of their performance of the procedures except, of course, for willful or wanton misconduct for which there is no immunity. In other words, since defendant's EMTs were providing plaintiff with life support services at the basic level which they were trained to perform, defendant had immunity from liability for misconduct amounting to no more than simple negligence in the performance of those services.

■ It seems clear from the record that these EMTs were not attempting any life support service beyond their level of training. They were qualified to provide cardiopulmonary resuscitation, which they did both at the beach and on the way to the hospital. They were qualified to splint a fracture, which they did by placing plaintiff on a spine board and strapping him onto the board. They were qualified to transport a patient in an ambulance, which they did. Hence, the services they performed were services they had been trained and certified to perform within the meaning of section 17, and the village rightfully claimed immunity from liability.

■ As a result of our ruling on the immunity question, the issue of fact present in this case does not preclude summary judgment. The evidence is contradictory as to whether the EMTs immobilized plaintiff's neck and head during transport to the hospital. However, this factual question is not material to the outcome of this cause. Defendant is immune from liability whether or not plaintiff's head was satisfactorily immobilized. To hold otherwise would render the immunity provision of section 17 virtually meaningless. We find the decision of the trial court here is consistent with the legislative purpose of the immunity provision.

We affirm the judgment entered by the circuit court of Peoria County.

Affirmed.

HEIPLE, P.J., and GORMAN, J., concur.