JAMES KIRWAN, as Special Adm'r of the Estate of Kimberly Kirwan, Deceased, Plaintiff-Appellant, v. LINCOLNSHIRE-RIVERWOODS FIRE PROTECTION DISTRICT *et al.*, Defendants-Appellees.

Second District   No. 2—02—1376

Opinion filed June 24, 2004.

Bruce M. Kohen, Curt N. Rodin, and Steven W. Burrows, all of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for appellant.

Robert Marc Chemers, Richard M. Waris, and David S. Osborne, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, James Kirwan, the administrator of the estate of decedent, Kimberly Kirwan, sued defendants, Lincolnshire-Riverwoods Fire Protection District (Fire Protection District) and Jason Phillips, James Spicka, Raymond Amidei, James Carney, and David Gnadt, who were paramedics, firemen, and/or emergency medical technicians employed by the Fire Protection District, in a wrongful death action stemming from the death of Kimberly Kirwan. The trial court dismissed plaintiff's amended complaint, finding that it failed to properly allege that defendants committed willful and wanton misconduct, as required by section 3.150 of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/3.150 (West 2002)). Plaintiff appeals. We reverse.

The following is a summary of the allegations contained in plaintiff's amended complaint. On March 7, 2001, decedent experienced an allergic reaction to walnuts while at Bar Louie, an establishment in Riverwoods. At 9:26 p.m. a 9-1-1 call was placed. The caller explained that decedent was having an allergic reaction and, as a result, was having a hard time breathing and staying awake. The caller further stated that decedent's throat was closing, and she was turning red and wheezing. The 9-1-1 dispatcher contacted the Fire Protection District and stated that an ambulance was needed for an allergic reaction. While the ambulance was en route, the 9-1-1 dispatcher contacted the paramedic defendants and advised them that decedent's throat was closing and that she was having a hard time breathing. According to the complaint, prior to arriving at the scene, defendants[1] knew that decedent was "in a life threatening situation due to an allergic reaction to walnuts." At approximately 9:31 p.m. the ambulance arrived at decedent's location.

Plaintiff alleges that defendants knew, immediately upon their arrival at the scene, that decedent was having difficulty breathing and had hives on her face and neck. Defendants further knew that decedent was in an "extreme, life-threatening situation" which if not immediately treated properly would lead to her death. The complaint states that "the Defendants knew at the time of their arrival, and for

---

[1]Plaintiff uses the term "defendants" in his complaint but, in context, often appears to be referring only to the paramedic defendants as opposed to the Fire Protection District, which is also a defendant. We note this ambiguity but, nonetheless, use plaintiff's terminology.

a period of time of at least six (6) minutes thereafter, that Plaintiff's Decedent's vital signs were stable and exhibited respiratory distress without anaphylactic shock." While this allegation is strangely worded, its import does not seem to be that defendants actually knew "at the time of their arrival" that decedent's vital signs were stable. Rather, the more reasonable reading of plaintiff's allegation is that based on readings that defendants completed as of six minutes after their arrival on the scene, defendants concluded that decedent's vital signs were stable both then and "at the time of their arrival." The next allegation further supports reading the complaint as alleging that defendants completed their check of decedent's vital signs six minutes after their arrival at the scene: "That the Defendant knew that as of six (6) minutes after arriving at the scene that Plaintiff [sic] Decedent's vital signs were as follows: Blood Pressure—120/100; Pulse—118; Respiratory rate—32; Pupils—pearl; and Skin—Hot/dry."

The complaint further alleges that defendants knew that decedent's condition was getting progressively worse and that there was an extremely limited time to provide the proper emergency medical treatment in order to prevent anaphylactic shock. Plaintiff alleges that decedent's life could have been saved upon defendants' arrival because her airway was not completely closed and she was conscious, alert, and had stable vital signs. Further, decedent's situation required emergency medical procedures including assuring that a patent airway existed and administering subcutaneous epinephrine, intramuscular Benadryl, and albuterol. Based on defendants' training and applicable standard operating procedures, epinephrine and "albuterol via nebulizer" should both have been administered within the first 60 seconds after defendants' arrival. Further, Benadryl should have been administered after the epinephrine. A separate allegation states that epinephrine immediately should have been administered subcutaneously. Defendants failed to administer epinephrine subcutaneously, albuterol via nebulizer, or Benadryl intramuscularly. Decedent's airway did not close for at least five minutes after the arrival of defendants. Defendants administered epinephrine and Benadryl intravenously only after decedent had gone into anaphylactic shock. Defendants administered the epinephrine at least seven minutes after their arrival on the scene. Defendants administered the Benadryl at least eight minutes after their arrival on the scene. Defendants did not administer albuterol via nebulizer. Plaintiff alleges that the delay in administering epinephrine and Benadryl and the failure to administer albuterol was "a violation of all applicable emergency medical standards of care and/or standard operating procedures and training" and was "indicative of an utter disregard of those standards and an utter indifference

for the life of [decedent]." Plaintiff further alleges that there was no medically justifiable reason for not administering this treatment. Defendants knew that immediate administration of epinephrine, albuterol, and Benadryl was required to prevent decedent from dying. The delay in administering epinephrine and Benadryl and the failure to administer albuterol caused decedent to go into anaphylactic shock and cardiac arrest and was "tantamount to a refusal to render emergency treatment." Defendants' behavior "evidences a complete indifference and utter disregard for the health and life of decedent." Finally, plaintiff alleges that the failure to receive proper medical services resulted in decedent's death. Decedent died on March 13, 2001.

On November 20, 2002, the trial court granted defendants' motion to dismiss plaintiff's amended complaint without prejudice. The court found that plaintiff had not sufficiently pleaded willful and wanton conduct because key allegations in his complaint were mere conclusions of law and fact that were not supported by well-pleaded facts. The court emphasized that, despite the fact that plaintiff was tendered the relevant standard operating procedures, plaintiff's allegation that defendants violated standard operating procedures does not specify which standard operating procedures were violated. Rather than file a second amended complaint, plaintiff moved the court to make its dismissal with prejudice so that he could appeal it. The court granted that motion, and plaintiff timely filed a notice of appeal. We review *de novo* the trial court's dismissal of plaintiff's complaint. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999).

■ On appeal plaintiff argues that his complaint sufficiently pleaded willful and wanton conduct. Section 3.150 of the EMS Act provides that persons or entities covered by the EMS Act who provide medical services in good faith will be immune from civil liability unless they are guilty of willful and wanton misconduct:

"Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with protocols developed pursuant to this Act, constitute willful and wanton misconduct." 210 ILCS 50/3.150 (West 2002).

The parties agree that the limited immunity provided for in section

3.150 applies to defendants but disagree as to whether plaintiff has properly pleaded willful and wanton misconduct. We must determine whether the amended complaint alleges sufficient facts to bring plaintiff's claim within the scope of a legally recognized cause of action. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 518 (1989). A complaint should not be dismissed unless, when viewing the allegations in the light most favorable to the plaintiff, it clearly appears that the plaintiff would not be entitled to relief under any set of facts. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999).

■ In Illinois there are two varieties of willful and wanton conduct, intentional and reckless. *Poole v. City of Rolling Meadows*, 167 Ill. 2d 41, 48 (1995). These two types of willful and wanton conduct are distinguished by the actor's mental state. Intentional willful and wanton conduct is committed with "actual" or "deliberate" intent to harm. Illinois Pattern Jury Instructions, Civil, No. 14.01 (1995). By contrast, reckless willful and wanton conduct falls in between actual intent and mere negligence. *Poole*, 167 Ill. 2d at 47. Although reckless willful and wanton conduct is not committed intentionally, it is nonetheless, at least in theory, determined based on the actor's "real or supposed state of mind." W. Keeton, Prosser & Keeton on Torts § 34, at 212 (5th ed. 1984). Specifically, both the legislature and the supreme court have defined reckless willful and wanton conduct as conduct committed with "utter indifference" to or "conscious disregard" for the safety of others. 745 ILCS 10/1—210 (West 2002); *Pfister v. Shusta*, 167 Ill. 2d 417, 421 (1995). The supreme court has also described the required mental state as a "reckless disregard" for the safety of others. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285 (2000). Further, "[i]ll will is not a necessary element of a wanton act [*i.e.*, reckless willful and wanton conduct]. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury." *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943). It is reckless willful and wanton conduct that is at issue in this case.

To plead a sufficient cause of action in either willful and wanton conduct or negligence, the plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 557 (1991). However, unlike negligence, in order to sufficiently plead willful and wanton conduct, a plaintiff

must also allege "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Adkins*, 129 Ill. 2d at 518.

■ An actor's "utter indifference" or "conscious disregard" for the safety of others may be inferred from the outrageous nature of the conduct committed. See, *e.g.*, *Doe v. Calumet City*, 161 Ill. 2d 374, 391 (1994). The supreme court has provided two examples of conduct from which "reckless disregard" for the safety of others can be inferred. The first is " ' "a failure, after knowledge of impending danger, to exercise ordinary care to prevent it." ' [Citations.]" *American National Bank*, 192 Ill. 2d at 285. The second is " ' "a failure to discover [a] danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." ' [Citations.]" *American National Bank*, 192 Ill. 2d at 285.

Whether willful and wanton conduct has been committed in any given case requires close scrutiny of the facts as disclosed by the evidence. *O'Brien v. Township High School District 214*, 83 Ill. 2d 462, 469 (1980), quoting *Lynch v. Board of Education*, 82 Ill. 2d 415, 430 (1980). The supreme court has described willful and wanton conduct as a "hybrid" between negligent and intentional acts. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275 (1994). Thus, "[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko*, 161 Ill. 2d at 275-76.

■ Whether a defendant's breach of a legal duty amounts to willful and wanton conduct is ordinarily a question of fact. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326 (1995). That said, because fact pleading is required in Illinois, a plaintiff must allege "facts which, if proven, would show that the defendants acted or failed to act with an utter indifference or conscious disregard" for the plaintiff's safety. *Adkins*, 129 Ill. 2d at 519. For purposes of a motion to dismiss, well-pleaded facts are taken as true and all reasonable inferences from such facts are drawn in favor of the plaintiff. *Calloway*, 168 Ill. 2d at 325. However, we may consider only well-pleaded facts and not conclusions of law or fact. *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 26 (1997). After reviewing the amended complaint, we conclude that plaintiff sufficiently pleaded reckless willful and wanton misconduct.

■ Defendants fault plaintiff for not pleading any facts describing their conduct during the first seven minutes they arrived on the scene. Defendants do not cite any legal basis for their conclusion that a plaintiff must describe in detail all of the defendants' conduct within the relevant time frame. It is not the rule in Illinois that a plaintiff

must plead every conceivably relevant fact. Rather, a plaintiff must allege sufficient facts to bring his claim within the scope of a legally recognized cause of action. *Adkins*, 129 Ill. 2d at 518. In this case, plaintiff's allegations were sufficient to state a claim for willful and wanton conduct. Plaintiff alleged that, despite defendants' knowledge prior to their arrival on the scene that decedent was having difficulty breathing and her throat was closing due to an allergic reaction, and despite their training and standard operating procedures and accepted emergency practices, they waited between seven and eight minutes to administer two of the necessary medications and never administered the third. In cases of life-threatening emergencies, seven or eight minutes can be a significant delay that could amount to "utter indifference" or "conscious disregard" for decedent's safety.

As we have noted, while there is a distinction between negligent conduct and that which is willful and wanton, the distinction is not necessarily a great one. There may be a reasonable explanation for defendants' conduct in this case, but it is not proper to dismiss a case on the basis of what probably happened (see *Yuretich v. Sole*, 259 Ill. App. 3d 311, 314 (1994)). The court in *Yuretich* stated that, "where merit is dependent upon the facts, a motion for summary judgment and not a motion to dismiss is the procedure which must be employed." *Yuretich*, 259 Ill. App. 3d at 314. This is a case where merit is dependent upon the facts, not one where merit can be determined as a matter of law at the pleading stage. Taking plaintiff's well-pleaded facts as true, we cannot say that it clearly appears that plaintiff would not be entitled to relief under any set of facts. Plaintiff's allegations, if proven, could be sufficient to show that defendants were aware of impending danger to decedent and failed to exercise ordinary care to prevent it, thereby acting with reckless disregard for her safety (see *American National Bank*, 192 Ill. 2d at 285).

We are similarly unpersuaded by defendants' emphasis on the absence of allegations referring to the particular standard operating procedures that defendants allegedly violated. The amended complaint alleges that defendants' failure to properly administer medications violated their training, accepted emergency medical care, and standard operating procedures. Defendants have cited no authority for the proposition that plaintiff was required to identify or attach as exhibits the specific standard operating procedures that were violated, and we decline to require plaintiff to do so. We wish to emphasize that we are not creating a loophole by which a plaintiff may avoid dismissal of an insufficiently pleaded complaint. Here, plaintiff specified the ways in which defendants violated the standard operating procedures but did not identify the procedures themselves. We believe this is sufficient. If

defendants believe that there is no issue of material fact as to whether they complied with the standard operating procedures, they should move for summary judgment. Furthermore, violation of the standard operating procedures was not the sole basis of the amended complaint. Plaintiff also alleged that defendants violated their training and accepted emergency care. Thus, even if plaintiff were required to point to the specific procedures that defendants violated, his failure to do so would not be a proper basis for dismissing the entire complaint.

For the foregoing reasons, we conclude that plaintiff sufficiently pleaded willful and wanton misconduct by defendants. We reverse the trial court's dismissal of plaintiff's amended complaint and remand for further proceedings.

Reversed and remanded.

GILLERAN JOHNSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:
The well-pleaded facts in plaintiff's complaint and the reasonable inferences therefrom fail to demonstrate that defendants' conduct was willful and wanton. Plaintiff has not identified the conduct that he alleges to be willful and wanton. Other than the fact that defendants did not administer albuterol, epinephrine, or Benadryl during the first seven minutes after their arrival on the scene, plaintiff has not pleaded any facts describing defendants' conduct during this period. Despite this, plaintiff concludes that precisely this conduct demonstrates that defendants acted with utter indifference and conscious disregard for the safety of decedent. This is not an instance where plaintiff has alleged that defendants did nothing or even failed to administer care. Plaintiff has simply avoided any description of defendants' conduct. In my view, it would be the exceptional circumstance where a plaintiff could plead facts that demonstrate that the defendant's conduct was willful and wanton by alleging only that the defendant failed to take a very precise course of action and not otherwise describing the nature of the defendant's conduct.

The remainder of plaintiff's complaint fails to compensate for this deficiency. The problem is that plaintiff's allegations that would otherwise, if proven, demonstrate willful and wanton conduct are not well-pleaded facts but conclusions. For example, plaintiff has alleged that defendants knew that immediate administration of epinephrine, albuterol, and Benadryl was required to prevent decedent from dying and that defendants failed to timely administer these drugs. I do not question that if this startling allegation is taken as true it amounts to

willful and wanton conduct; however, this allegation is a conclusion because plaintiff has not alleged facts from which such knowledge could be reasonably inferred. Plaintiff also alleges that "the failure to administer epinephrine for seven (7) minutes and [B]enadryl for eight (8) minutes, and the failure to ever administer albuterol, is more than simply a violation of all applicable emergency medical standards of care but is indicative of an utter disregard of those standards and an utter indifference for the life of [decedent]." Relatedly, plaintiff alleges that this conduct violated standard operating procedures for paramedics. Given their context, these allegations are also conclusions. In determining the legal sufficiency of a complaint, a court looks at the complaint as a whole. *Lloyd v. County of Du Page*, 303 Ill. App. 3d 544, 552 (1999). Thus, in one context, an allegation may be a proper allegation of fact, while in another context, the same allegation may not give an opponent sufficient information about the character of the evidence to be introduced or the issues to be tried, and it may be deemed a conclusion. *J. Eck & Sons, Inc. v. Rueben H. Donnelly Co.*, 213 Ill. App. 3d 510, 514 (1991). While I can envision a case where it would be sufficient to merely allege that conduct so flagrantly violates the standard of care as to be willful and wanton, this is not the case, because plaintiff has not sufficiently described the nature of the conduct in question. As previously mentioned, plaintiff has not identified the nature of defendants' conduct other than to allege that a very precise course of action was not taken. Additionally, plaintiff has not even identified any particular standard operating procedures that defendants violated. Therefore, plaintiff's allegation that defendants so flagrantly violated standards of care as to be guilty of willful and wanton conduct is a conclusion.

Moreover, plaintiff's inability to point to a particular standard of care or standard operating procedure is not attributable to a problem of access. It is true that where facts of necessity are within the defendants' knowledge and not within the plaintiff's knowledge, a complaint that is as complete as the nature of the case allows is sufficient. *Yuretich v. Sole*, 259 Ill. App. 3d 311, 313 (1994). However, the transcripts of the proceedings below reveal that defendants tendered to plaintiff the applicable standard operating procedures for paramedics. Despite this, plaintiff did not identify the relevant standard operating procedures in his complaint. Furthermore, even if plaintiff had alleged that defendants violated a particular standard operating procedure, plaintiff would still have the problem that he did not allege what the paramedics did for the first seven minutes that they were on the scene. I note that statements made by plaintiff to the trial court strongly suggest that the reason plaintiff failed to allege the particular

standard operating procedures that defendants violated was that the standard operating procedures do not designate any time limits for administering the care that they mandate. Thus, they do not support (and, in fact, disprove) plaintiff's allegation that defendants violated standard operating procedures by administering various treatments late. It is obvious to me that plaintiff, aware that the EMS Act insulates emergency medical personnel from liability for negligence, has simply affixed the parlance of "willful and wanton" to alleged conduct that is no more than negligent.

There is particularly good reason for conscientious adherence to the fact-pleading requirement in the context of the EMS Act because of the policy rationale behind it. In the EMS Act, the legislature sought to promote effective and efficient emergency response by trained medical personnel by limiting the risk of malpractice liability. *Gleason v. Village of Peoria Heights*, 207 Ill. App. 3d 185, 188-89 (1990). As *Gleason* recognized, fear of liability can have a perverse effect on a paramedic's decision making. Society, being constituted of potential patients, has an interest in paramedics making their treatment decisions based on what is best for their patient. Where fear of liability skews a paramedic's treatment decision, the patient suffers because he does not receive the treatment that the paramedic believes most effective. *Gleason* explained that "[e]mergency personnel must not be afraid to do whatever they can under less than ideal circumstances." *Gleason*, 207 Ill. App. 3d at 189. Where courts are not diligent in enforcing the fact-pleading requirement, the purpose of the EMS Act is thwarted because complaints alleging quintessentially negligent conduct may survive motions to dismiss, thereby making it likely that paramedics will be haled into court based on the good-faith effectuation of their job duties.

The bottom line is that if these defendants were physicians rather than paramedics, and thus liable for negligence, these allegations of willful and wanton conduct would be seen as ridiculous. If this complaint is sufficient, then every complaint alleging medical malpractice should also contain a count of willful and wanton conduct. I respectfully dissent because the legislature intended to provide immunity to these defendants, not simply to require plaintiff to label negligent conduct as willful and wanton conduct.